## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE MEAD CORPORATION, : | |
| : | |
| Plaintiff, : | COURT NO. 95-12-01783 |
| : | Before: Watson, Sr. Judge |
| v. : | |
| : | |
| THE UNITED STATES, : | |
| : | |
| Defendant. : | |
| : | |

[Defendant's motion for summary judgment granted on the ground that, as a matter of law, imported books whose main purpose is the notation of daily activity are "diaries," notwithstanding the inclusion of supplementary material such as pages for addresses and telephone numbers. In addition, the court finds that such diaries, when held in ring binders, are "bound" within the meaning of the tariff law even though the pages are removable.]

Lamb & Lerch (*Sidney H. Kuflik*), for plaintiff.

*Frank W. Hunger*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office; Civil Division, Dept. of Justice, Commerce Litigation Branch (*Amy M. Rubin*), and Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service (*Mark G. Nackman*), for defendant.

### OPINION and ORDER

This action involves the tariff classification of imported loose-leaf books containing calendars, room for daily notes, telephone numbers, addresses and notepads. This sort of product originated in England and is probably best known under the trademark of Filofax.[1]

---

[1] Filofax, Inc., importer and U.S. distributor of the "Filofax" line of products, has filed an amicus curiae brief. It did so primarily to make the point, hereby acknowledged, that "Filofax" is a registered trademark, properly used only in connection with Filofax products. It is not a

1

The importations were classified as bound diaries under Subheading 4820.10.20 of the Harmonized Tariff Schedules of the United States ("HTSUS"). That provision, in context, reads as follows:

| | |
|---|---|
| 4820 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard: |
| 4820.10 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles: |

CLASSIFIED:

| | |
|---|---|
| 4820.10.20 | Diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles...........3.2% |

CLAIMED:

| | |
|---|---|
| 4820.10.40 | Other................................................Free |

Mead has moved for partial summary judgment with respect to two causes of action, first, that the importations are not "diaries" and, second, that the importations are not "bound." A third cause of action, relating to two of the imported styles, in which the loose-leaf binder is not riveted to the jacket cover, are not included in plaintiff's motion. The government's cross-

---

generic term for the type of products involved in this case. As for the classification issues involved herein, Filofax is pursuing its own actions with respect to the classification of its products.

motion covers the entire action and seeks summary judgment that all the importations are bound diaries as a matter of law and were properly classified as such. The parties agree that the resolution of this action depends on the determination of the meaning of the words "diary" and "bound" as used in the relevant subheading.

Plaintiff's first argument is that the importations are not diaries within the meaning of Subheading 4820.10.20. The Court notes that, if this is so, they would not be classifiable as similar to diaries under that subheading even though the subheading ends with the phrase "and similar articles." This is so because, unlike Subheading 4820.10, the phrase "and similar articles" in Subheading 4820.10.20 does not refer back to diaries. The semicolon in that subheading breaks it into separate units and only memorandum pads and notepads are the subjects of the final phrase "and similar articles." In other words, if the importations are similar to diaries, but not actually diaries, they would not fit into subheading 4820.10.20 and plaintiff's claim would be correct.

Both parties argue that their position is supported by prior case law. However, in the opinion of the Court, the case law supports the position of the government on the first issue. In other words, the importations are within the tariff understanding of the term "diaries."

In Fred Baumgarten v. United States, 49 Cust. Ct. 275, Abstract No. 67150 (1962), the importation was described as follows:

> The imported article, as represented by plaintiff's exhibit 1, is a plastic-covered book, approximately 4 ¼ by 7 ⅜ inches in dimensions. Its first few pages contain, successively, the date "1961," the notation "Personal Memoranda," calendars for the years 1960, 1961, and 1962, and a few statistical tables. The

>following 20-odd pages contain spaces for addresses and telephone
>numbers, each page more or less set aside for each letter of the
>alphabet. The remaining portion of the book consists of ruled
>pages allocated to the days of the year and the hours of the day and
>each headed with calendars for the current and following months.
>A blank-lined page, inserted at the end of each month's section, is
>captioned "Notes."

The court held that the distinguishing feature of a diary was "its suitability for the receipt of daily notations" and found that "[b]y virtue of the allocation of spaces for hourly entries during the course of each day of the year, the books are designed for that very purpose." It should be noted that the presence of pages for addresses and telephone numbers did not affect the court's conclusion in that case.

In Brooks Bros. v. United States, 68 Cust. Ct. 91, C.D. 4342 (1972) the court had before it an importation called the Economist Diary, a spiral bound book offered and sold as a diary with "more blank pages, used for recording events and appointments, than there are pages containing information." The court found that the diary portion was the essential or indispensable part of the importation and was therefore controlling of its classification.

In Charles Scribner's Sons v. United States, 6 CIT 168, 574 F. Supp. 1058 (1979) the court overturned the classification of a product as a diary under Item 256.56 of the Tariff Schedules of the United States ("TSUS") in favor of classification as a calendar under Item 274.10. The article in question consisted of a book described as an engagement calendar for the year 1979. The book consisted of photographs, each photograph occupying one page and facing another page on which a calendar was devoted to the seven days of a week. The book covered fifty-three weeks in all. The court found that the space allocated to daily notation was "minuscule, measuring approximately one-inch by 4 13/16 inches, and was intended for a

4

notation of no more than a sentence or two." The court further found that the essential purpose of the book was to "convey high-quality Sierra Club photography in the form of a calendar."

The common thread in these cases is the understanding that "diaries" are articles whose principle purpose is to allow a person to make daily notations concerning events of importance. Articles may be diaries even if they contain supplementary material of a different type, such as useful printed information or addresses and telephone numbers. It can therefore be fairly concluded that tariff language adopted with knowledge of these judicial precedents maintains the understanding inherent in those decisions. Central Products Co. v. United States, 20 CIT ___, 936 F. Sup. 1002, 1006-7 (1996).

Plaintiff also argues that the diary provision in the HTSUS differs from prior tariff provisions sufficiently to make cases decided under earlier tariff laws inapplicable. Plaintiff points to the fact that the term "diary" in Item 256.56 of the TSUS was an eo nomine provision including all forms of a diary. Under the HTSUS, contends plaintiff, articles "similar" to a diary are "other" than diaries and have a separate provision in Subheading 4820.10.40.

This line of reasoning implies that articles with special features other than those purely dedicated to daily notation may be similar to diaries, but not actually diaries. This argument would be persuasive if it appeared that the provision for "other" articles similar to diaries would be empty or meaningless unless articles such as these came within its ambit. But the government points out that there exists a category of merchandise more remote from "pure" diaries than the importations but still sufficiently close to be called "similar." Thus, in HQ 955199 of January 24, 1994 (defendant's Exhibit P) the Customs Service issued binding classification rulings that a small diary-like book entitled "Special Occasion Book," devoted to making notes for "recording

5

the name, date, occasion and gift idea for special dates" and a book called "Car Care Planner" devoted to the entry of information related to the maintenance of a car were similar to diaries and therefor came within the scope of "other" articles under Subheading 4820.10.40. They were not actually diaries, reasoned the ruling, because their usefulness was limited to special situations.

The rationale used in that ruling is persuasive and provides reassurance that the residual provision for "other" articles in Subheading 4820.10.40 need not be read as covering these importations out of concern that otherwise the subheading would cover nothing at all.

As is often the case, the exhibits are potent evidence. Examination of them leads the Court to conclude that the importations are forms of diaries rather than articles similar to diaries. Their use for notational purposes is not confined to a limited phase of human life or to a narrow area of activity. They are designed for notations concerning the full range of daily experience. As such, they fall within the meaning of the term "diaries" notwithstanding the fact that they contain supplementary material.

In the second stage of this dispute, the success of plaintiff's claim depends on whether or not the diaries are "bound" within the meaning of the subheading in which they were classified.

On this question the plaintiff argues that the meaning of "bound" ought to be derived from the permanent form of attachment demanded of books in Overton & Co. v. United States, 22 Treas. Dec. 437, T.D. 3237 (1912). That was a decision of the Board of General Appraisers in which General Appraiser Israel F. Fischer (later to be Chief Justice of the United States Customs Court in its first years ) held that permanent binding was the distinction between a book and a booklet. In that decision it was held that small books for such purposes as the recording of weddings or the progress of a baby's growth were books under paragraph 416 of the Tariff Act of

6

1909 rather than booklets under paragraph 412 because they were "firmly and permanently stitched and bound small books, such as are the product of the bookbinders art."

In that case "booklets" were understood to be "an article used for greeting or souvenir purposes, sold and dealt in by art dealers and stationers, and made up of several leaves or inserts flimsily fastened within a folder of paper or other material."

The Court is mindful of the salutary principle that a continuity of meaning should be maintained from one tariff act to another if Congress has not indicated otherwise. Hemscheidt Corp. v. United States, 72 F.3d 868 (Fed. Cir. 1995). However, it cannot be said that the Overton decision spoke to the general meaning of the term "bound" as it might be used in a statute. It simply decided that the distinction between a book and booklet lay in the relative permanence of the binding. This is not the sort of judicial decision that fixes statutory terminology so as to allow the court to reason that the legislators must have later used "bound" in the sense of articles that are irremovably joined to one another.

Nor can it be said that the later use of the term "bound" in the Tariff Schedules of the United States or the present HTSUS was so specifically linked to the field of book manufacture that specialized dictionary definitions of the term or bookbinding expertise ought to apply. The tariff provisions here under consideration cover a wide variety of book and non-book articles. Even those that are in book form are not the traditional books of the bookbinding trade. It follows that in these circumstances, the term "bound" should be given its common meaning rather than one associated with the trade of book manufacture. The common meaning of "bound" is fastened. The irrevocability of the fastening is not important so long as it goes beyond the transitory role of packaging.

7

For the reasons given above, it is the opinion of the Court that the importations at issue are bound diaries within the meaning of Subheading 4820.10.20 of the HTSUS. Consequently, defendant's motion for summary judgment will be granted.

DATE: 7/14/98

S/ James L. Watson
James L. Watson
Senior Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE MEAD CORPORATION,<br><br>          Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>          Defendant. | COURT NO. 95-12-01783<br>Before: Watson, Sr. Judge |

## ORDER

This matter is before the court on plaintiff's partial motion for summary judgment, and defendant's cross-motion for summary judgment regarding the tariff classification of imported loose-leaf books.

It is hereby **ORDERED** that defendant's cross-motion for summary judgment is granted and the action is hereby dismissed.

DATE: 7/14/98

S/ James L. Watson
James L. Watson
Senior Judge

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed endorsed penalty cover in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

Raymond F. Burghardt
Clerk of the Court

Date: 7-15-98          By: _____
                            Deputy Clerk